UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-02156-AH-(PDx) | Date | August 18, 2025 |
| Title | Forrest Sawlaw, et al. v. Mosaic Capital Investors I, LP, et al. | | |

| | |
|---|---|
| Present: The Honorable | Anne Hwang, United States District Judge |

| Yolanda Skipper | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE (DKT. NOS. 64, 65) [JS-6]**

Before the Court is Defendants'[1] Motion to Transfer Venue. Mot., Dkt. No. 65.[2] Plaintiffs Forrest Sawlaw ("Sawlaw"), William Sholy ("Sholy") and Lucas Warburton ("Warburton") (collectively "Plaintiffs") oppose. Opp'n, Dkt. No. 71. Defendants have also filed a joint Reply. Reply, Dkt. No. 86. The matter is fully briefed, and the Court heard oral argument on August 13, 2025. For the reasons set forth below, the Court GRANTS Defendants' Motion.

---

[1] Defendants include Mosaic Capital Investors I, LP ("Mosaic"), True West Capital Partners Fund II, L.P. ("True West"), Keith Butcher ("Butcher"), Michael Zeller ("Zeller"), Ian Mohler ("Mohler"), Iain Douglas ("Douglas"), Moore & Van Allen PLLC ("MVA"), and GreatBanc Trust Company ("GreatBanc"). Mosaic, True West, Butcher, Zeller, Mohler, and Douglas are referred to as the "Investor Defendants."

[2] Initially, only Defendants MVA and Zeller filed the Motion to Transfer Venue. Dkt. No. 64. Thereafter, there was a joint Motion to Transfer Venue filed by all Defendants, Dkt. No. 65, with Defendants MVA and Zeller joining in the joint Motion to Transfer Venue. Dkt. No. 66. The Court references Dkt. No. 65 when referencing the Motion in the Order.

## I.  BACKGROUND

This is a case about a group of lawyers and professional investors who allegedly abused the Employee Stock Ownership Plan ("ESOP") at Hollandia Produce Group, Inc. ("Hollandia").  SAC ¶¶ 1, 2, Dkt. No. 85.  Plaintiffs allege that the Investor Defendants loan money to ESOP companies, or advise clients and partners who do.  *Id.* ¶ 19.  They then obtain control of the ESOP company for themselves or their clients and then stack the deck against the ESOP through price negotiation, loan terms, management of the loan, stock warrants, subsequent capital transactions, and the terms for their ultimate exit from the company.  *Id.*

Hollandia is a produce company.  *Id.* ¶ 22.  In the 2010s, Hollandia's founding family considered selling the business.  *Id.* ¶ 23.  During that process, Hollandia's founding family met ButcherJoseph and Mosaic.  *Id.*  Mosaic is the investment vehicle through which the scheme to abuse the ESOP occurred.  *Id.* ¶ 10.  Butcher is a founder of Mosaic and its related ESOP consulting firm, ButcherJoseph.  *Id.* ¶ 12.  And Butcher controls Mosaic and ButcherJoseph.  *Id.*  Plaintiffs allege that the Investor Defendants made their standard pitch to the founding family of Hollandia around 2015.  *Id.* ¶ 25.  The Investor Defendants would pitch to small business owners the benefits of selling their companies to an ESOP:  tax-favored treatment of sale proceeds, immediate liquidity, and rewarding employees with a long-term benefit.  *Id.* ¶ 24.  The family then resolved to sell Hollandia to their 125 employees through an ESOP created by the Investor Defendants.  *Id.* ¶ 25.

Plaintiffs allege that the Investor Defendants did not disclose to the founding family that the ESOP would not have independent representation.  *Id.* ¶ 26.  Plaintiffs also allege that the Investor Defendants further concealed that they would direct the company to maximize their own return on investment over the next seven years without concern for the ESOP's interests.  *Id.*  The Investor Defendants orchestrated the ESOP transition of Hollandia in all respects.  *Id.* ¶ 27.  Mosaic, True West, and two other firms loaned Hollandia the cash to fund the transaction, and to re-finance Hollandia's existing debt.  *Id.* ¶ 30.  Plaintiffs also allege that the Investor Defendants installed Zeller as the ESOP's legal counsel while concealing from the trustee Zeller's investments in Mosaic and ButcherJoseph.  *Id.* ¶ 20.  Zeller is an ESOP attorney at MVA.  *Id.* ¶ 13.

Plaintiffs allege that the Investor Defendants' standard pitch to business owners was that their goal was to create ESOPs that would continue to operate

after the Investor Defendants' notes reached maturity. *Id.* ¶ 53. However, Plaintiffs allege that the Investor Defendants would look for the most favorable exit terms for themselves without regard to the fate of their ESOPs. *Id.* Plaintiffs allege that the Investor Defendants found their opportunity to exit Hollandia through a company called Local Bounti. *Id.* ¶ 54. The Investor Defendants caused Hollandia to enter a period of confidential negotiations with Local Bounti, which led to an agreement in March 2022 for Local Bounti to acquire all outstanding interests in Hollandia. *Id.* ¶ 55. Plaintiffs allege that the Investor Defendants negotiated and structured the termination deal in order to maximize their return at the expense of the ESOP. *Id.* ¶ 58. Plaintiffs also contend that Zeller advised GreatBanc to approve the ESOP termination deal, and GreatBanc approved the deal in reliance on Zeller's advice. *Id.* ¶ 63. GreatBanc was the ESOP's trustee. *Id.* ¶ 34. The ESOP continues to hold the proceeds of the Local Bounti deal on behalf of ESOP participants. *Id.* ¶ 66. The terms of the deal required Hollandia to cease all new contributions and cut off membership in the ESOP as of the termination date. *Id.* But the terms further prohibit distribution of the sale proceeds to ESOP participants until 2027, when all escrow accounts related to the transaction are due to be settled. *Id.*

Sawlaw, Sholy, and Warburton are all former employees of Hollandia. *Id.* ¶¶ 7–9. Sawlaw and Warburton are current participants in the ESOP, and they allege that Defendants' misconduct led to their ESOP account being worth less than it should be. *Id.* ¶¶ 7, 9. Sholy received a distribution from the ESOP account, which was less than it should have been. *Id.* ¶ 8.

Plaintiffs filed this suit against Defendants on March 11, 2025. Dkt. No. 1. Plaintiffs filed their First Amended Complaint on May 12, 2025, Dkt. No. 61, and then filed their SAC on July 21, 2025, alleging twelve counts of violations of the Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. § 1001, *et seq.* and one count of legal malpractice against Zeller, MVA, and Great Banc. *See generally* SAC. Plaintiffs bring this action against Defendants as the representatives of the Class of similarly situated persons, and on behalf of Hollandia's ESOP. *Id.* ¶ 1. Defendants collectively move to transfer this case to the United States District Court for the Western District of North Carolina.

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it

might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Under § 1404(a), the district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (cleaned up).

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013) (footnote omitted). "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion…must evaluate both the convenience of the parties and various public-interest considerations." *Id.* (footnote omitted). This "calculus changes, however, when the parties' contract contains a valid forum-selection clause." *Id.* at 63 (cleaned up). When there is a valid forum selection clause, the court "may consider arguments about public-interest factors only." *Id.* at 64.

## III.   DISCUSSION

"First, a court must evaluate the forum selection clause's scope and applicability to determine whether it encompasses the dispute at issue." *Wallace v. Int'l Paper Co.*, 2020 WL 4938361, at *3 (C.D. Cal. July 2, 2020) (citing *Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013)). "Second, a court must determine whether the forum selection clause is valid." *Id.* (citing *Atl. Marine*, 571 U.S. at 62–65). "Third, a court must evaluate whether the public interest factors weigh in favor of transfer." *Id.* (citing *Atl. Marine*, 571 U.S. at 62–65).

### A.   Scope and Applicability of the Forum Selection Clause

The Court will first determine whether the forum selection clause applies to this dispute.

#### 1.   **The Forum Selection Clause Is Not Void**

Plaintiffs first argue that the entire Legal Services Agreement is void as against public policy and that the forum selection clause is therefore invalid. Opp'n at 9. Plaintiffs argue that Zeller was conflicted from representing the ESOP because he was adverse to the ESOP in the Local Bounti transaction based on his investments in ButcherJoseph and Mosaic. *Id.*

"[I]n deciding a motion to transfer based on a forum selection clause, courts consider the clause itself, not the contract as a whole[.]" *Knight v. Wata, Inc.*, 2022 WL 3574441, at *4 n.1 (C.D. Cal. July 27, 2022); *see also Rodney Sacks Fam. Ltd. P'ship v. Ritchie Cap. Mgmt., LLC*, 2009 WL 10673985, at *3–*4 (C.D. Cal. June 4, 2009).[3]

The Seventh Circuit has rejected Plaintiffs' argument here. *See Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759 (7th Cir. 2006). *Muzumdar* found that "Appellants also spend a good deal of time trying to convince us that because the contracts themselves are void and unenforceable as against public policy…the forum selection clauses are also void. The logical conclusion of the argument would be that the federal courts…would first have to determine whether the contracts were void before they could decide whether, based on the forum selection clauses, they should be considering the cases at all." *Id.* at 762.

The First Circuit has also cited to *Muzumdar*'s analysis, noting that an "absurdity" would result from an argument that the contracts containing the forum selection clauses are void. *See Autoridad de Energía Eléctrica de Puerto Rico v. Vitol S.A.*, 859 F.3d 140, 147 (1st Cir. 2017).

In addition, the D.C. Circuit similarly held that a "forum-selection clause is understood not merely as a contract provision, but as a distinct contract in and of itself—that is, an agreement between the parties to settle disputes in a particular forum—that is separate from the obligations the parties owe to each other under

---

[3] At the hearing on this Motion, Plaintiffs argued that the authorities within the Ninth Circuit cited in their Opposition hold that the Court must first consider the validity of an entire contract before determining whether a forum selection clause is valid. However, neither this Court's own decision in *Rad Communications Inc. v. Security Insurance Co.*, 2025 WL 1673750 (C.D. Cal. Mar. 31, 2025), nor another district court opinion in *Smith v. Nerium International, LLC*, 2019 WL 3110027 (C.D. Cal. Apr. 3, 2019), so hold. The other cases cited by Plaintiffs in their Opposition, *see* Opp'n at 8–9, analyze the unconscionability of a forum selection clause. *See, e.g., Escobar v. Nat'l Maintenance Contractors, LLC*, 2022 WL 17830001, *1 (9th Cir. Dec. 21, 2022) ("[a]n unconscionable forum-selection clause is invalid"); *DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956, 967 (9th Cir. 2022) ("district court did not abuse its discretion in finding that the forum-selection clause was void and unenforceable"). But Plaintiffs here make no argument regarding the validity of the forum selection clause.

the remainder of the contract." *Marra v. Papandreou*, 216 F.3d 1119, 1123 (D.C. Cir. 2000).

Accordingly, the Court considers the clause itself here, which is discussed in greater detail below, and not the validity of the contract as a whole. And Plaintiffs do not challenge the forum selection clause itself, but rather Plaintiffs' arguments essentially go to the merits of their underlying claims regarding a general conflict of interest asserted in the relationship. The Court therefore finds that the Legal Services Agreement that contains the forum selection clause is not void for purposes of this Motion.

### 2. <u>Scope of Forum Selection Clause</u>

"[B]ecause enforcement of a forum selection clause necessarily entails interpretation of the clause before it can be enforced, federal law…applies to interpretation of forum selection clauses." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). "In order to determine the scope of the forum selection clause, the Court must examine its construction." *Cedars-Sinai Med. Ctr. v. Glob. Excel Mgmt., Inc.*, 2010 WL 5572079, at *5 (C.D. Cal. Mar. 19, 2010) (citing *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir.1999)).

Here, the forum selection clause provides:

> This Agreement shall be governed by the laws of either the state of North Carolina or the state of South Carolina (based on the primary office location of the MVA attorneys retained). The parties irrevocably consent to the personal jurisdiction of and exclusive venue in the state and federal courts in the state of North Carolina or the state of South Carolina (based on the primary office location of the MVA attorneys retained) for **any disputes arising out of or relating to** this Agreement.

Ex. 1 Attachment A at 12, Dkt. No. 65-2 (emphasis added).

When a clause states that disputes are "arising out of" or "arising under" the contract, the clause's scope extends to "disputes and controversies relating to the interpretation of the contract and matters of performance." *Mediterranean Enters.*, 708 F.2d at 1464 (internal quotation marks and citation omitted). However, when a clause states "arising out of or relating to" the contract, the clause's scope is

limited to "claims that have a significant relationship to the contract or have their origin or genesis in the contract." C*edars-Sinai*, 2010 WL 5572079, at *5 (internal quotation marks omitted) (collecting cases); *see also Wallace*, 2020 WL 4938361, at *5. "The phrase 'arising under' is narrower in scope than the phrase 'arising out of or relating to.'" *Mediterranean Enters.*, 708 F.2d at 1464 (cleaned up).

Here, the forum selection clause relates to actions for "any disputes arising out of or relating to" the Legal Services Agreement. Ex. 1 Attachment A at 12. Thus, the clause's scope is limited to claims that have a significant relationship to the Legal Services Agreement or have their origin or genesis in the Agreement. *See* C*edars-Sinai*, 2010 WL 5572079, at *5.

Plaintiffs argue that the forum selection clause does not apply to claims relating to misconduct before November 8, 2021, which was when the Legal Services Agreement was signed. Opp'n at 16. Moreover, Plaintiffs argue that their claims relating to the misconduct after the Legal Services Agreement was signed are not covered by it because they exist apart from it. *Id.* at 17.

However, the SAC alleges a scheme running from 2015 to the 2022 sale of Hollandia to Local Bounti, which was completed following Zeller and MVA's legal representation of GreatBanc, as trustee of the ESOP, in the transaction with Local Bounti (i.e., the work covered by the Legal Services Agreement). SAC ¶¶ 25, 54, 55, 63; Ex. 1 Attachment A. The crux of the underlying SAC is that the Investor Defendants conspired with Zeller, who was the ESOP's legal counsel, while Zeller had conflicts to make decisions that benefited the Investor Defendants as opposed to the ESOP and its participants. *Id.* ¶ 20. The SAC further alleges that the Investor Defendants installed Zeller as the ESOP's legal counsel while concealing from the trustee Zeller's investments in Mosaic and ButcherJoseph. *Id.* Plaintiffs also allege that:

> GreatBanc relies on outside advisors to perform its fiduciary duties, and it is common for the lawyers and other advisors assisting GreatBanc to spend more time on a transaction—and receive higher fees—than GreatBanc. It was therefore material that the Investor Defendants installed their partner Zeller as the ESOP's legal counsel, who advised GreatBanc to accept the Hollandia ESOP terms. It was also material that the Investor Defendants did not disclose to GreatBanc that Zeller was their partner despite this severe conflict of interest.

*Id.* ¶ 35. Much of the harm alleged here is based on the consummation of the Local Bounti deal.[4] *Id.* ¶¶ 55–62. And because of the work covered by the Legal Services Agreement, Zeller and MVA advised GreatBanc to approve the deal, which Plaintiffs allege constituted legal malpractice. *Id.* ¶¶ 63, 71.

Count XIII is a legal malpractice claim against Zeller, MVA, and GreatBanc. In addition, Plaintiffs' four ERISA claims against GreatBanc depend on finding malpractice. Moreover, three ERISA claims specifically allege malpractice at the termination of the ESOP. For example, Count X alleges that "GreatBanc violated these fiduciary duties by relying on Zeller with respect to the ESOP termination transaction without engaging in an adequate inquiry[.]" *Id.* ¶ 144.

Accordingly, these are "claims that have a significant relationship to the contract[.]" *Cedars-Sinai*, 2010 WL 5572079, at *5.

Moreover, Plaintiffs argue that certain Defendants cannot enforce the forum selection clause because they were not parties to the Agreement.[5] Opp'n at 18–19. However, when "the alleged conduct of the non-parties is so closely related to the contractual relationship…the forum selection clause applies to all defendants." *Manetti-Farrow*, 858 F.2d at 514 n.5. "A range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Id.* (cleaned up); *see also TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990) ("As for Transamerica Corporation and the individual defendants, they do not object to being governed by the forum selection clause, and they have all agreed to submit to the jurisdiction of the Swiss

---

[4] Although Plaintiffs allege ongoing conflicted legal representation, SAC ¶ 71, the SAC alleges significant financial harm resulting from the sale. *Id.* ¶ 67.

[5] At the hearing on this Motion, Plaintiffs argued for the first time that the forum selection clause should not be enforced because Plaintiffs were not parties to the agreement. As an initial matter, the Court declines to consider arguments raised for the first time in oral argument, rather than in the papers. Moreover, even if the Court considered the merits of the argument, the Court notes that the claims asserted by Plaintiffs are based on malpractice committed against the ESOP, and the ESOP (through GreatBanc as Trustee) was a party to the agreement. Plaintiffs seek to ground their claims in the legal representation of GreatBanc in its role as Trustee of the Plan, but at the same time disavow the Legal Services Agreement that forms the basis of that representation. The Parties are therefore closely related such that the forum selection clause also applies to Plaintiffs.

courts. It is not unreasonable or unjust to enforce the clause even though some of them did not sign the agreement.").

In addition, three Defendants, GreatBanc, MVA, and Zeller, were parties to the Agreement and can enforce the forum selection clause. And "courts often find that the interests of justice warrant transfer of an entire action as opposed to splitting the action between two different venues." *Duarte v. California Hotel & Casino*, 2009 WL 4668739, at *5 (D. Haw. Dec. 4, 2009) (collecting cases).

Accordingly, the Court finds the forum selection clause applicable in its entirety to this suit.[6]

---

[6] The section 1404(a) private interest factors, notwithstanding the forum selection clause, also favor transfer. *See Jones*, 211 F.3d at 498–99 ("the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof") (footnote omitted). Here, Plaintiffs' choice of forum would receive less deference because this is a class action brought on behalf of the ESOP participants. In addition, it appears that much of the key events involving this case occurred outside this district. For example, Montana-based Local Bounti acquired Hollandia, and Plaintiffs allege this transaction led to significant financial harm. SAC ¶¶ 54, 67. Moreover, Plaintiffs allege that Zeller had investments in Mosaic and ButcherJoseph at all times that he was advising the ESOP, which was an undisclosed conflict of interest constituting legal malpractice. *Id.* ¶ 68, 69. Zeller resides in North Carolina, while Mosaic is based in North Carolina. *Id.* ¶¶ 10, 13. Lastly, Mosaic, MVA, Mohler, and Zeller are all either based in or reside in North Carolina. *Id.* ¶¶ 10, 13, 14, 16. And Butcher and Sawlaw reside in Florida, while Great Banc is based in Illinois. *Id.* ¶¶ 7, 12, 17. The only Parties based in California are True West, Douglas, Sholy, and Warburton. *Id.* ¶¶ 8, 9, 11, 15. However, Defendants Douglas and True West are in favor of transferring the case. Sholy and Warburton were only recently added as plaintiffs, and the original plaintiff, Sawlaw, is a resident of Florida. Plaintiffs rely heavily on the argument that Hollandia was a California corporation, with California founders, and the ESOP was therefore created in California. However, the conduct complained of was caused by Defendants based elsewhere, and the

### B. Enforceability of the Forum Selection Clause

"Forum selection clauses are prima facie valid, and are enforceable absent a strong showing by the party opposing the clause that enforcement would be unreasonable or unjust, or that the clause is invalid for such reasons as fraud or overreaching." *Manetti-Farrow*, 858 F.2d at 514 (cleaned up). There are three grounds for repudiating a forum selection clause: "first, if the inclusion of the clause in the agreement was the product of fraud or overreaching; second, if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and third, 'if enforcement would contravene a strong public policy of the forum in which suit is brought.'" *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–13, 15, 18 (1972)).

Here, Plaintiffs do not argue that the forum selection clause itself is unenforceable on any of these grounds.

In addition, the Ninth Circuit has held that a forum selection clause must specify venue with "mandatory" language to be enforced. *See Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989). To be mandatory, the forum selection clause "must contain language that clearly designates a forum as the exclusive one." *N. California Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995).

Here, the forum selection clause uses mandatory language to set state and federal courts in the state of North Carolina or the state of South Carolina as the exclusive venue. Ex. 1 Attachment A at 12. The forum selection clause states that the "parties **irrevocably** consent to the personal jurisdiction of and **exclusive** venue in the state and federal courts in the state of North Carolina or the state of South Carolina[.]" Ex. 1 Attachment A at 12 (emphasis added).

Accordingly, the forum selection clause is enforceable.

---

allegations do not relate to Hollandia's general operations in California. Accordingly, the Court finds that the private interest factors weigh in favor of transferring the entire action.

### C. Public Interest Factors

"[A] court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Atl. Marine*, 571 U.S. at 64. However, "a district court may consider arguments about public-interest factors only." *Id.* "Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6 (cleaned up). The party acting in violation of the forum selection clause "bear[s] the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 67.

#### 1. Administrative Difficulties

First, although Defendants have not provided information regarding court congestion in the Western District of North Carolina, "the Central District is one of the busiest courts in America." *Reddy v. Mediscribes, Inc.*, 2020 WL 2220202, at *7 (C.D. Cal. Feb. 18, 2020) (cleaned up).

Thus, this factor would weigh in favor of transfer.

#### 2. Local Interest

"[T]he local interest factor weighs in favor of a California forum where a California plaintiff is suing a California defendant over conduct that took place in the state." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1233 (9th Cir. 2011). However, when "defendants are not California corporations, California has little interest in keeping the litigation in this state to deter future wrongful conduct." *Guimei v. Gen. Elec. Co.*, 172 Cal.App.4th 689, 703 (2009) (citations omitted).[7]

---

[7] At the hearing on this Motion, Plaintiffs relied on *Jorgensen v. Scolari's of California, Inc*., 2014 WL 12480261 (C.D. Cal. Nov. 12, 2024). In that case, the court found that "while district courts in Nevada and California are equally equipped to adjudicate ERISA claims, California has a strong interest in protecting the rights of its citizens and monitoring the pension plans its citizens anticipate receiving benefits from in the future." *Id*. at *3. While the Court acknowledges this interest here, the Court notes that countervailing interests were not present in

Here, Mosaic, MVA, Mohler, and Zeller either reside in or are based in North Carolina. SAC ¶¶ 10, 13, 14, 16. Butcher and Sawlaw reside in Florida, while GreatBanc is based in Illinois. *Id.* ¶¶ 7, 12, 17. The only Parties based in California are True West, Douglas, Sholy, and Warburton. *Id.* ¶¶ 8, 9, 11, 15.

Moreover, given that Zeller is an attorney based in North Carolina and MVA is a law firm based in North Carolina, North Carolina has a strong interest in regulating the conduct of its attorneys to protect its citizens against improper conduct. *See Canatella v. California*, 404 F.3d 1106, 1110 (9th Cir. 2005) ("states traditionally have exercised extensive control over the professional conduct of attorneys, as each state has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses") (cleaned up).

On balance, the Court does not find this factor to weigh against transfer.

### 3. <u>Governing Law</u>

Finally, twelve out of the thirteen causes of action are based on ERISA violations, which are based on federal law. Thus, this district and the Western District of North Carolina are equally familiar with federal law applicable to the majority of Plaintiffs' claims.

The one claim that seems to be based on state law is Count XIII, which is a legal malpractice claim against Zeller, MVA, and GreatBanc. However, legal malpractice claims would not be unique to California. North Carolina similarly can address Plaintiffs' legal malpractice claim.[8] In addition, as mentioned above, North Carolina has a strong interest in regulating the conduct of its attorneys.

The Court does not find this factor to weigh against transfer either.

---

that case, including allegations of legal malpractice of out-of-state attorneys and a forum selection clause.

[8] Count XIII does not clearly indicate whether this claim is brought under California or North Carolina law, although it cites to a California Court of Appeal case. SAC ¶ 160. But, as noted, Zeller, MVA, and GreatBanc are not California residents or based in California, and there is no allegation that Zeller is licensed to practice law in California. To the extent this claim is based on North Carolina law, this factor weighs in favor of transfer.

The Court finds that Plaintiffs have not met their burden "of showing that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 67.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Transfer to the United States District Court for the Western District of North Carolina. This action is TRANSFERRED to the United States District Court for the Western District of North Carolina.

**IT IS SO ORDERED.**